IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:08CV45-V

| | |
|---|---|
| LOREE KAISER-FLORES, )<br>individually, and on behalf of others )<br>similarly situated, )<br>               Plaintiff(s), )<br>)<br>v. )<br>)<br>LOWE'S HOME CENTERS, INC., )<br>               Defendant.[1] )<br>_____ ) | Memorandum and Order |

**THIS MATTER** is before the Court on the following motions and related memoranda:

1) Defendant's Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction (Doc.#54); 2) Plaintiff's Motion for Relief from the Court's Order Striking the Affidavit of Ronald Parsons (Doc.#50); 3) Defendant's Motion for Leave to File the Declaration of Donald H. Bradley, R.A. (Doc.#61); and 4) Plaintiff's Motion For Preliminary Injunction (Doc.#14).

### I. Nature of Case

**A. Facts As Alleged by Loree Kaiser-Flores**[2]

Plaintiff Loree Kaiser-Flores ("Plaintiff") purchased a clothes dryer from a Lowe's retail store in Carmel, Indiana, on or about April 9, 2007 for $673.20 (Am. Compl. ¶¶16, 22) Through its agents and representatives, Defendant Lowe's Home Centers, Inc. ("Lowe's") and Plaintiff entered into a contract whereby Lowe's agreed to provide installation services consistent with the

---

[1] The Amended Complaint also identifies Lowe's Companies, Inc., as a Defendant. However, Plaintiff voluntarily dismissed Lowe's Companies, Inc., on June 11, 2008. (Doc.#6)

[2] Note that the parties describe the actual piece of equipment at issue differently. Plaintiffs refer to a "vent" while Defendant refers to a "transition duct."

1

manufacturers' specifications, and Plaintiff paid $50 for the service. (Am. Compl. ¶¶47, 48)

On April 30, 2008, approximately one year later, Plaintiff discovered that her dryer was connected to a metal foil vent. (Am. Compl.¶23)  According to Plaintiff, flexible metal foil vents are unsafe if used with certain dryers including the Whirlpool model Plaintiff purchased from Lowe's. (Am. Compl. ¶¶31,32)  Plaintiff claims that Lowe's breached the installation contract by failing to install the Whirlpool dryer safely and according to the manufacturer's instructions. (Am. Compl. ¶13)  More specifically, Plainitff contends Lowe's is in breach for failing to use a heavy metal vent when installing the Whirlpool dryer. (Am. Compl. ¶13) Plaintiff also asserts that Lowe's had knowledge of the improper installation of dryers yet has not taken appropriate steps to ensure customers' safety.  (Am. Compl. ¶¶35)   Plaintiff further contends that members of the putative class *either have or will* incur significant damages. (Am. Compl. ¶¶15, 51)

Plantiff, purporting to act on behalf of a putative class, commenced this civil action on May 21, 2008.[3]  (Doc. #1)  Plaintiff filed an Amended Class Action Complaint on June 3, 2008. (Doc.

---

[3] The Putative Plaintiff Class is defined within the Amended Complaint as:

"All persons who purchased a Dryer from Lowe's, who entered into a contract with Lowe's to install the Dryer, and whose Dryer was installed pursuant to that agreement with a vent that was not in accordance with the manufacturer's requirements (the "Class")."

(Am. Compl. ¶7)

The Court has since come to learn that there are various class action suits now pending in other federal district courts that allege similar facts and legal theories on behalf of different individuals (or named class representatives) and similar putative class members against different individual defendants. *See, e.g.*, Mack v. Hhgregg, No. 1:08CV0664-DFH-WTL (S.D. Ind. Aug. 21, 2008); Jones v. Sears, Roebuck and Co., No. 08CV2951 (N.D. Ill. May 21, 2008).  In both of these cases, provided as supplemental authority by Plaintiff, there are critical factual differences with respect to the nature of plaintiff's installation agreement that render these cases inapposite. (*See* Def..'s 11-6-08 brf. / Doc. #65) However, in both cases, injunctive relief was denied for the same reasons as discussed herein.   Plaintiff also provided a fourth supplemental authority where the district court allowed the breach of contract claim to proceed on the theory of improper installation but denied injunctive relief for lack of standing.

2

#3) Plaintiff's Amended Complaint alleges breach of contract as its primary cause of action, along with several alternative legal theories.[4] The Amended Complaint includes a request for injunctive relief as one of its specific remedies. (Am. Compl. ¶¶82-88, Prayer for relief ¶F)

On June 17, 2008, Plaintiff moved for expedited discovery and injunctive relief. (Doc. #14) On July 2, 2008, the Court issued an oral (or text-only) Order denying Plaintiff's Motion for Expedited Discovery.

Lowe's filed its opposition brief on July 11, 2008. Lowe's presented evidence that the duct purchased by Plaintiff from Lowe's is a Lambro Industries flexible metal foil dryer transition duct that is "UL-listed."[5] (Douglas Rich Decl. ¶3(a)) According to Lowe's, its product complies with the applicable Carmel, Indiana, Building Code as well as national building codes, and is equally as safe as any heavy metal transition duct.[6] Lowe's explains that flexible metal foil transition ducts are allowed by the United States Consumer Product Safety Commission and approved of "by *most*

---

*See* Goldstein v. The Home Depot U.S.A., Inc., N.D.Ga. No.: 1:08CV1825.

[4] Plaintiff's Amended Class Action Complaint alleges: Breach of contract - seeking monetary damages; (Count 1); (2) Breach of contract - seeking specific performance (Count 2 / Alternative to 1); (3) Unjust enrichment (Count 3 / Alternative to contract claims); (4) Money had and received (Count 4 / Alternative to contract claims); and (5) Injunctive relief (Count 5).

[5] The initials "UL" refer to the Underwriters Laboratories test protocol for clothes dryer transition ducts. Obtaining the UL listing means that the Lambro Industries flexible metal foil transition duct purchased by Plaintiff passed all of the requisite "flame burning" and "flame resistance" tests pursuant to UL 2158A. (Def.'s Resp. Prelim Inj. / Exhs. 3,5)

[6] According to Lowe's, the Carmel, Indiana Building Code requires that:

> Flexible transition ducts used to connect the dryer to the exhaust duct system shall be limited to single lengths, not to exceed 8 feet (2348 mm) in length and shall be listed and labeled in accordance with UL 2158A. Transition ducts shall not be concealed within construction.

(Rich Decl. / Exh. A)

manufacturers of electric dryers." (Def.'s Resp. at 2)  In addition, Lowe's contends that the more flexible ducts are necessary for many space-constrained dryer installations.  (Id.)

Plaintiff submitted a reply brief on July 18, 2008, along with seven additional affidavits or declarations, including the Ronald E. Parsons Declaration ("Parsons Declaration").  The Parsons Declaration speaks to the safety issues raised by Plaintiff's Amended Complaint and is offered to rebut the materials presented by Lowe's in its response in opposition.

On July 20, 2008, Lowe's moved to strike certain exhibits submitted by Plaintiff in conjunction with Plaintiff's reply, namely, the affidavits of Loree Kaiser-Flores, Jim Blanchard, and Ronald E. Parsons filed July 18, 2008.[7] (Doc. #48)

On July 21, 2008, the parties appeared before the undersigned for the first time.  After hearing oral argument on Defendant's motion to strike, the undersigned granted the motion in part and denied it in part, striking the Parsons Declaration for purposes of determining whether Plaintiff met its burden under Rule 65 and Blackwelder.[8]  The Court declined to strike the Kaiser-Flores and Blanchard affidavits.  Plaintiff made an oral Motion for Reconsideration and the Court ultimately decided to provide the parties with an opportunity to be heard further in light of the fact that Lowe's Motion to Strike was filed the day prior to the hearing.

The Court then heard evidence and argument regarding Plaintiff's Motion for Preliminary Injunction but deferred ruling given the concern that Plaintiff lacked standing.  Defendant also represented that it would be seeking dismissal pursuant to FED. R. CIV. P. 12.  The parties were

---

[7] Lowe's does not seek to strike the first affidavit of Loree Kaiser-Flores, dated June 13, 2008. The first Kaiser-Flores affidavit was submitted as an attachment to Plaintiff's Motion for Preliminary Injunction.  (Doc. #15 / Exh. A)

[8] *See* Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193 (4th Cir. 1977).

4

asked for additional briefing on the matter of standing.

On August 4, 2008, Lowe's moved to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). (Doc. #54) Since that time, Plaintiff has filed a memorandum in opposition as well as several Notices of Supplemental Authority.[9] (Docs. ##59, 64, 67, 69)

On September 19, 2008, Defendant filed a Motion for Leave to File the Declaration of Donald H. Bradley, R.A. (Doc. #61)

These issues are now ripe for disposition by the Court.

## II. Standing / Lack of Subject Matter Jurisdiction[10]

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "[T]he gist of the question of standing" is whether plaintiffs have alleged such a "personal stake in the outcome" as to assure that "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illuminations of difficult constitutional questions . . . ." Baker v. Carr, 369 U.S. 186 (1962). In other words, standing contemplates "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752 (1984).

The standing doctrine requires a plaintiff to show (1) injury-in-fact; (2) a causal connection or traceability; and (3) redressability. Lujan, 504 U.S. at 560-61 (party invoking federal jurisdiction bears the burden of establishing standing) (*citing* FW / PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990); Warth v. Seldin, 422 U.S. 490, 508 (1975)). The injury-in-fact criteria contemplates that

---

[9] Defendant opposes Plaintiff's supplemental filings. (Docs. ##65, 68)

[10] Standing to sue in federal court is governed by federal law, even in diversity cases based on state law claims and in actions removed from state court. Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537 (3rd Cir. 1994).

the alleged injury-in-fact is both "concrete and particularized and actual or imminent."[11] Lujan, 504 U.S. at 560. In addition, "there must be a causal connection between the injury and the conduct complained of . . . ." Id. at 560. Stated differently, the injury must be "fairly traceable" to action by the defendant. Id. (*citation omitted*). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (*internal quotation marks omitted*).

As discussed, *supra,* Plaintiff alleges that Lowe's breached the purported installation contract by failing to install the dryer safely and according to the manufacturer's instructions (*i.e.*, failing to use a heavy metal vent when installing the Whirlpool dryer). (Am. Compl. ¶13) In a similar case filed in the Northern District of Illinois, the trial court found Article III standing based upon the alleged breach of the installation contract. *See* Jones v. Sears, Roebuck and Co., No. 08CV2951 (N.D. Ill. May 21, 2008). The court explained:

> Sears was paid money to install the dryer. Therefore, there must have been a contract: The promise by Sears to install the dryer and the consideration by Jones in the form of payment. ***Sears' argument that Jones suffered no injury confuses the subject of the contract.*** The contract did not involve the sale of the dryer but for the installation of the dryer. Therefore, if Sears failed to install it properly, it should be held to account for ***the cost of remedying the faulty installation***.

Jones, *supra*. In other words, the injury alleged is "the cost of remedying the faulty installation." Plaintiff's breach of contract claim, based upon the alleged improper installation of her Whirlpool clothes dryer, satisfies the Article III standing requirement.

---

[11] The term particularized means that "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561 n.1.

## III. Rule 12(b)(6) / Failure To State A Claim

**A. Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While a complaint need not contain detailed factual allegations in order to survive a 12(b)(6) motion, the plaintiff must plead enough to give the defendant "fair notice" of the claim and "the grounds upon which it rests . . . ." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (*quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957)). As the Supreme Court explained in Twombly, a complaint survives Rule 12(b)(6) if it alleges "enough facts to state a claim that is plausible on its face." Id. at 1974; St. Germain v. Howard, 2009 WL 117944, *2 n. 2 (5th Cir. 2009) ("plausibility standard" articulated in *Twombly*); *but see* Anderson v. Sara Lee Corp., 508 F.3d 181, 188 n. 7 (4th Cir.2007) (courts and commentators have been grappling with the *Twombly* decision's meaning and reach); Blackburn v. Calhoun, 2008 WL 850191, *3 (N.D. Ala.)) (*Twombly* retired the "no set of facts" standard).[12] "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

It is well established that when conducting a 12(b)(6) analysis, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (*citing* Twombly, 127 S.Ct. at 1965.); G.E. Inv. Private Placement v. Parker, 247 F.3d 543,

---

12

A court may consider documents outside of the pleadings so long as the documents are integral to the complaint, explicitly relied on in the complaint, and their authenticity is not challenged. *See* Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); In re Cree, Inc. Securities Litig., 333 F. Supp. 2d 461, 469 (M.D.N.C. 2004); Tatum v. R.J. Reynolds Tobacco Co., 294 F. Supp. 2d 776, 781 (M.D.N.C. 2003), rev'd on other grounds, 392 F.3d 636 (4th Cir. 2004). Although the term pleading can be defined broadly, the "main pleadings are the plaintiff's complaint and the defendant's answer." Black's Law Dictionary 1173 (7th ed. 1999).

548 (4th Cir. 2001). However, "conclusory allegations and unwarranted deductions of fact are not admitted as true . . . ." Blackburn, 2008 WL 850191, *3 (*internal citations omitted*). A plaintiff must do more than allege "a legal conclusion couched as a factual allegation." Twombly, 127 S.Ct. at 1965 (*quoting* Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**B. Analysis**

    **i. Breach of Contract**

Lowe's argues that Plaintiff has not alleged facts in support of a breach of contract claim. Citing Indiana law, Lowe's enumerates the essential elements as: (i) the existence of a valid enforceable contract; (ii) defendant's breach; and (iii) resulting injury to plaintiff.[13] (*See* Def.'s Resp. 10-12) (*citing* Collins v. McKinney, 871 N.E.2d 363, 370 (Ind. Ct. App.2007)).

A valid and enforceable contract is established by evidence of an offer, acceptance, consideration, and a manifestation of mutual assent. *See* Troutwine Estates Dev. Co. v. Comsub Design & Eng'g, Inc., 854 N.E.2d 890, 897 (Ind. Ct.App. 2006).

Here, Plaintiff does not allege that any written contract exists.[14] Instead, Plaintiff alleges the existence of an ***oral express or implied*** contract for professional installation – as opposed to merely

---

[13] Lowe's applies North Carolina's choice of law rules, which Lowe's contends require the application of Indiana state law. In terms of the essential elements of a breach of contract claim, the laws of both states are similar. (Pl.'s Resp. at 7) ("The allegations in the Amended Complaint, as well as all favorable inferences therefrom, state a claim for breach of contract under any state's law.")

[14] One of the few writings provided to the Court is what Lowe's describes as a "Loading Ticket" indicating Plaintiff received delivery of the Whirlpool washer and dryer set on April 15, 2007. (Doc.#37 / Def.'s Exh. 1B) The document denotes a "Delivery Charge" of $50.00. (Id.) In addition to delivery, the document includes a "checklist" with positive "checks" beside the following tasks: 1) Inspect unit for damage, remove all packing materials and shipping . . .; 2) Inspect leveling legs, lock nuts, shelving, drip pans, level the unit/s; 3) Connected, tightened, and checked all water line connections for leaks; 4) Connected dryer vent; 5) Tested unit/s to ensure proper operation and wiped down unit/s; 6) Give customer owner's manual and answered all questions. (Id.)

a sales or delivery contract.[15] (Am. Compl. ¶16) Determining the terms of an alleged contractual agreement often gives rise to a question of fact.[16] Under Indiana law, it is for the Court to resolve, as a question of law, whether a "certain or undisputed set of facts" establishes a contract. *See* Wallem v. CLS Indus., Inc., 725 N.E.2d 880, 883 (Ind. Ct.App.2000) (*citing* Indianapolis v. Twin Lakes Enterprises, 568 N.E.2d 1073, 1079 (Ind.Ct. App. 1991)); Kelly v. Levandoski, 825 N.E.2d 850, 857 (Ind.Ct.App.2005). However, "[d]etermination of the terms of an oral contract is a matter for the trier of fact." Thomas J. Henderson, Inc. v. Leibowitz, 490 N.E.2d 396, 399 (Ind. Ct. App.1986). The Amended Complaint alleges that Plaintiff paid Lowe's $50 to "professionally" install the Whirlpool dryer, which includes the hook up or attachment of the dryer to the transition duct or vent. (Am. Compl. ¶¶9, 13, 16, 22, 47-53) Plaintiff alleges that Lowe's breached its contract by failing to install the dryer properly. Explained by Plaintiff, she "did not receive what she paid and bargained for: a dryer installed in a manner consistent with the manufactures[sic]'s requirements."[17] (Pl.'s Resp. To MTD at 4) Whether Plaintiff adequately pled facts to support her claim that Lowe's is in breach depends upon the terms of the parties' actual agreement.[18]

---

[15] Lowe's asserts that the $50 Plaintiff paid to Lowe's was in exchange for delivery of the dryer only rather than the professional installation services offered by Lowe's in connection with a gas dryer purchase and installation. (Rich Decl. ¶¶6, 7)

[16] *See e.g.*, Chestnut Forks Tennis Club v. T.J. Intern., Inc., 56 F.3d 60, 1995 WL 323982, *4 (4th Cir.1995) (*unpublished*) (whether additional terms to contract existed gave rise to a jury question).

[17] Plaintiff also states in her memoranda that "the putative class did not pay for substandard work," which sounds more like a claim grounded in negligence (*i.e.*, negligent installation) than a contractual claim. (Pl.'s Resp. To MTD at 7)

[18] Like the Jones court, the undersigned finds that a contract existed between Plaintiff and Lowe's for, at minimum, delivery of the dryer. Lowe's concedes this much. (Rich Decl. ¶3c) Whether Lowe's contractual obligation to Plaintiff went beyond mere delivery cannot be resolved on this record.

Given the dispute between the parties here regarding the terms and scope of their agreement, dismissal pursuant to 12(b)(6) is inappropriate. Lowe's contends there was no "meeting of the minds" and represents that Plaintiff's contract was for "delivery and hook up" only. (Rich Decl. ¶¶3, 4) As for the specific terms of the purported installation contract, Lowe's suggests that in order for Plaintiff to succeed on her claim, the Court would have to find that the actual Whirlpool dryer's warnings (displayed on the outside walls of the dryer itself and noted within the user's manual) were incorporated into the agreement between Plaintiff and Lowe's. However, for purposes of the instant motion, the Court accepts as true Plaintiff's allegation that the contract terms included a promise by Lowe's that its installation of the dryer would adhere to the manufacturer's specifications. As already discussed, if Plaintiff were able to make out her breach of contract claim, Plaintiff's damages would include any costs associated with a second installation and correct hook-up. Applying the appropriate standard, Plaintiff's cause of action survives Defendant's Rule 12(b)(6) motion.[19]

### ii. Unjust Enrichment / Money Had & Received

As alternatives to her breach of contract action, Plaintiff alleges equitable theories such as "unjust enrichment" and "money had and received."

"[U]njust enrichment and quantum meruit are merely legal fictions invented by the common law courts in order to permit recovery where in fact there is no true contract, but where, to avoid unjust enrichment, the courts permit recovery of the value of the services rendered just as if there

---

[19] That is not to say that Plaintiff is likely to succeed on the merits or that Plaintiff will be able to withstand summary judgment. A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by*, Harlow v. Fitzgerald, 45 U.S. 800 (1982).

had been a true contract." Wallem v. CLS Indus., Inc., 725 N.E.2d 880, 890 (Ind. Ct.App.2000) (summary judgment).

Plaintiff's "money had and received" claim is likewise an equitable action recognized in the State of Indiana. According to the Indiana Court of Appeals:

> An action for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money . . . belongs to the plaintiff, and where money has been received by mistake of facts or without consideration, or upon a consideration that has failed, it may be recovered back. Such an action rests upon an implied promise and may be maintained against the person who received money from the plaintiff under circumstances which in equity and good conscience he should not retain.

Lawson v. First Union Mortg. Co., 786 N.E.2d 279, 283 (Ind. Ct.App.2003) *(internal citations omitted)*. In Lawson, the state court held that even though an express contract existed, recovery was possible based upon this equitable theory given an invalid contract provision. *See* Lawson, 786 N.E.2d at 283-84 (*citing* Huff v. Biomet, Inc., 654 N.E.2d 830, 837 (Ind.Ct.App. 1995)) (rule of law holding that recovery cannot be based upon a theory implied in law when the parties are controlled by a contract only applies when the contract is valid). Given the *potential* for an equitable recovery, the Lawson court held that the trial court's dismissal pursuant to Rule 12(b)(6) was error. Id. at 285.

In Jones, based upon the determination that the plaintiff entered into a contract with Sears and, therefore, had a remedy at law, the court dismissed plaintiff's causes of action for specific performance or injunctive relief, unjust enrichment, and money had and received. *See* Jones*, supra;* (10-10-08 Tr. Hr'g at 5). The Goldstein court reached the same decision. *See* Goldstein, *supra*.

In this case, the nature and terms of the alleged contract are unknown. In addition, it is

11

unclear from Plaintiff's Amended Complaint whether her cause of action is limited to an express oral contract, or whether Plaintiff will ultimately contend that Lowe's impliedly agreed to install the Whirlpool dryer according to the manufacturer's specifications rather than attempt to prove up an express contract. Equitable relief is not precluded when "there is no express contract or when there is a dispute as to whether a contract exists." *See* Ray Skillman Oldsmobile & GMC Truck, Inc. v. General Motors Corp., 2006 WL 694561, *6 (S.D. Ind. March 14, 2006) ("The uncontested existence of a valid, binding express contract covering the relationship between [the parties] defeats any effort by [plaintiff] to receive compensation from [defendant] through a constructive contract.") Therefore, the Court finds that at this stage of the litigation, the better course of action is to allow Plaintiff's equitable claims to remain as alternative theories to Plaintiff's contract claim.

## IV. Motion For Preliminary Injunction

### A. Standard

"[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." Manning v. Hunt, 119 F.3d 254, 263 (4th Cir.1997)(*quoting* Hughes Network Syss., Inc. v. Interdigital Commnc's Corp., 17 F.3d 691, 693 (4th Cir.1994)). In order to obtain injunctive relief, the Plaintiff must show that without such relief, it will suffer irreparable injury and also that it is likely to prevail on the merits. Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975). In considering whether to grant a motion for a preliminary injunction, the following factors are relevant:

> 1) the likelihood of irreparable harm to the plaintiff if the relief is denied;
> 2) the likelihood of harm to the defendant if the requested relief is granted;
> 3) the likelihood that the plaintiff will succeed on the merits; and
> 4) the public interest.

Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (quoting Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)); see also Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193 (4th Cir. 1977). The Plaintiff bears the burden of establishing that these factors favor granting the injunction. Manning, 119 F. 3d at 263.

In considering these factors, the Court first must determine what irreparable harm will be suffered by the Plaintiff if the relief is denied. The irreparable harm must be "neither remote nor speculative, but actual and imminent." Direx Israel, 952 F.2d at 812. If the plaintiff makes a showing of irreparable harm, the next step is to balance that harm against the harm to the defendant if the relief is granted. Id. After balancing these two factors, the Court should grant the relief requested if the balance "tips decidedly" in favor of the Plaintiff and if the dispute raises questions "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation. . ." Blackwelder, 550 F.2d at 195. However, if the balance tips in favor of the defendant, a stronger showing of likely success on the merits is required. Rum Creek, 926 F.2d at 359.

**B. Analysis**

  **i. Balance of hardships**

In terms of the nature of harm justifying injunctive relief, Plaintiff alleges that pursuant to the U.S. Fire Administration / Division of Dept. of Homeland Security, clothes dryers were involved in an estimated 15,600 US structure fires, 15 deaths, 400 injuries and $99 million in property damage, annually, between 2002 - 2004. (Am. Compl. ¶¶33) Plaintiff further claims that the leading cause of clothes dryer fires is improper installation of vents and the excessive build up of lint within the dryer. (Am. Compl. ¶34 - listing various news articles reporting home fires) Thus, Plaintiff describes her irreparable harm as:

- An increased threat of fire due to improper installation / use of transition duct (or vent) inconsistent with dryer manufacturer's specifications
- An increased threat of death, personal injury, or property damages as a result of fire

The potential harm to Lowe's is substantial given the nature of the affirmative relief sought (*i.e.*, damage to reputation / goodwill). According to Lowe's, it is a burden to require Lowe's to manually identify and notify all former Lowe's customers who purchased electric dryers and delivery [dating back to May 2005]. In terms of cost, Lowe's asserts that to do so would generate an astronomical expense because there are no electronic records.[20] (Def.'s Resp. at 18-20.) Lowe's is also concerned with the potential damage to Lowe's reputation and goodwill if the Court were to grant the specific performance Plaintiff seeks.

The balance of hardships weighs in favor of Lowe's and against imposing injunctive relief. At this point, Plaintiffs' general cites about fire hazards has not been linked up to Lowe's, alleged improper installation by Lowe's, and flexible metal foil transition ducts. Even the Whirlpool dryer's owner manual cited by Plaintiff 1) advises the consumer to observe all governing codes and ordinances; 2) speaks to the use of flexible metal vents and specify when use is acceptable (though recommend heavy metal vents); and 3) addresses what to do if using an existing vent system.

Plaintiff contends she [the class] has no adequate remedy at law because her damages are "deficient compared to [the] harm suffered." Plaintiff's claim is remarkable in that Plaintiff can simply replace her transition duct if she believes it poses a fire hazard.[21] *See* <u>Mack v. Hhgregg</u>, No.

---

[20] The estimate of costs given by Defendant is a minimum of $16 million ($6 million for costs associated with researching and notifying former customers; $10 million for damage to reputation and goodwill).

[21] According to Lowe's, replacement of the metal foil transition duct with a rigid metal or semi-rigid metal duct would only cost approximately $11.00. (Vranich Decl. ¶3) However, as of the hearing date, Plaintiff had inexplicably not done so.

1:08CV0664-DFH-WTL (S.D. Ind. Aug. 21, 2008) (another federal district court held in a parallel "improper dryer vent installation" case that "plaintiffs failed to show that they face an imminent threat of irreparable harm for which there is no adequate remedy at law"). However, Plaintiffs' theory is distinguishable from the other types of cases where an increased risk of harm is sufficient to show irreparable harm. In sum, because Plaintiff has not demonstrated that the injury alleged is, in fact, irreparable and imminent, Plaintiff's motion for preliminary injunction is denied.[22]

**C. Standing To Seek Prospective Injunctive Relief On Behalf Of Class**

"[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (*internal citations omitted*).

In terms of the prospective relief sought here, including issuance of notices to similarly situated consumers, this Plaintiff lacks standing to make such a request. Accepting the facts alleged as true, and the other evidence presented, Plaintiff is already on notice of the potential danger and fully aware how to cure or remedy her complaint. *See* Goldstein, *supra*. It is difficult to imagine how, under these facts, and with multiple Lowe's transactions, this particular Plaintiff could represent the putative class described in the Amended Class Action Complaint.

---

[22] The Court is also reluctant to find that Plaintiff has demonstrated a likelihood of success on the merits. The record evidence presents issues regarding: 1) the formation, nature / scope, and terms of the parties' contract; 2) whether the contract was implied or express; and 3) what duty, if any, did Lowe's owe Plaintiff at the time of her second transaction, namely, the refund / purchase of the Whirlpool washer and dryer set.

## V. Plaintiff's Motion To Reconsider Order Striking Parsons Declaration

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Plaintiff also asks the Court to reconsider its oral Order striking the affidavit of Ronald E. Parsons.[23] (Doc.#37-4, 37-7) The basis for the Court's initial ruling on this issue was that Lowe's had been prejudiced in defending against Plaintiff's Motion for Preliminary Injunction as a result of Plaintiff's inclusion of the Parsons Affidavit within Plaintiff's reply brief.[24]

Defendant argued at the July 21, 2008 hearing that Plaintiff was required to file all affidavits it intended to rely upon in seeking injunctive relief by June 17, 2008 - the date the memorandum of law in support was filed. *See* Fed. R. Civ. P. 6(c)(2).[25] In addition to Rule 6(c)(2), the district's local rules, namely, Local Civil Rule 7.1(E), also contemplate that "a reply brief should be limited to a discussion of matters newly raised in the response." LCvR 7.1(E).

As further support for its opposition, Lowe's cites the parties' correspondence dated July 16, 2008, and presented to the Court for purposes of planning in connection with the preliminary injunction hearing. The parties' letter advised the Court as follows:

---

[23] Rule 60(b) gives the district court discretion to grant relief from an order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

[24] It appears that Plaintiff incorrectly assumed that her request for expedited discovery would be granted, that Plaintiff would discover additional evidence to support the legal theories advanced, and that she would be allowed to strengthen her motion for injunctive relief with supplemental evidence. When the undersigned denied the request for expedited discovery, Plaintiff was forced to rely on a "thin" Amended Class Action Complaint and memorandum of law in support of a preliminary injunction.

[25] Rule 6 of the Federal Rules of Civil Procedure provides in part:

"Any affidavit supporting a motion **must be served with the motion**."

Fed. R. Civ. P. 6(c)(2)(*emphasis added*).

> "1. At this time, the parties intend to rely on the declarations of witnesses referenced in their papers instead of presenting live witness testimony. ***If, however, Plaintiff presents new evidence in her reply, which is due on or before Friday, July 18, 2008, Lowe's may object and may reserve the right to counter any such new evidence with additional declarations and / or live witnesses.. . .***"

(7/16/08 Letter to Court / Doc. #51 Pl.'s Exh. A) Although the parties' letter agreement mentions declarations of witnesses "referenced in their papers," the context is that of advising the Court of the *type* of evidence to be presented. The letter expressly contemplates that Lowe's may submit additional materials in response to any "new evidence" Plaintiff presented in support of her motion.

The Court, having reviewed the relevant legal authorities, perceives the issue to be whether Plaintiff's reply brief (including exhibits) is "responsive" to the arguments Lowe's advanced in its opposition brief.[26] *See generally*, McGinnis v. Se. Anesthesia Assocs., 161 F.R.D. 41, 42 n. 1 (W.D.N.C. 1995) ("[A] party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date.") Lowe's posits that the Parsons Declaration elucidates arguments key to Plaintiff's case (*i.e.*, why she contends the installation by Lowe's is unsafe and places the putative class at risk) and, therefore, should have been submitted along with the Motion for Preliminary Injunction. Indeed, Parsons sets forth his opinion regarding the origin and cause of mechanical failure relevant to dryers and ducts. Plaintiff contends that the Parsons Declaration does not raise new factual issues but instead responds directly to the evidence presented in Lowe's opposition filing. (Pl.'s Mem. In Supp. MTR at 5)

In light of the Court's decision that Plaintiff's Article III standing is derived from the breach of contract claim, as well as the Court's finding that Plaintiff fails to establish actual, imminent, and

---

[26] Determining "responsiveness" depends upon how the issues are framed and invites a relatively subjective analysis.

irreparable harm (with or without the Parsons Declaration), Plaintiff's Motion to Reconsider is rendered moot. However, to the extent Plaintiff asks the Court to reconsider its Order striking the Parsons Affidavit for purposes of evaluating standing, the motion is allowed.[27]

## VI. Lowe's Motion For Leave To File / Donald H. Bradley Declaration

Defendant requests the Court to grant leave to file the Declaration of Donald H. Bradley ("Bradley"). Bradley is the "Building Law Compliance Officer" of the Indiana Department of Homeland Security within the Division of Fire and Building Safety. (Bradley Decl. ¶1) Bradley's responsibilities include "the interpretation of the Indiana Residential Code," which has been adopted by the City of Carmel. (Bradley Decl. ¶¶1,2) Defendant proffers Bradley's Declaration in response to Plaintiff's Motion for Preliminary Injunction and specifically, the Blanchard Affidavit produced by Plaintiff. Jim Blanchard ("Blanchard") is an employee of the City of Carmel, Indiana, as a building inspector, and has been since 1986. (Blanchard Aff. ¶2) Blanchard and Bradley proffer opposing interpretations of the Carmel, Indiana Building Code. (Blanchard Aff. ¶3; Bradley Decl. ¶¶4-6) Because neither of these opinions is determinative of the Court's decision denying Plaintiff's request for mandatory injunctive relief, Defendant's motion is rendered moot.[28]

## VII. Order

**IT IS HEREBY ORDERED:**

1) Defendant's Motion To Dismiss is **DENIED;**

2) Plaintiff's Motion For Preliminary Injunction is **DENIED;**

---

[27] Defendant's Rule 602 and 702 evidentiary challenges to the Parsons Declaration need not be addressed at this time.

[28] Should Lowe's seek to rely on the Bradley Declaration in future motions practice or at trial, it may be resubmitted for consideration.

18

3) Plaintiff's Motion To Reconsider Order Striking Parsons Affidavit is **GRANTED**; and

4) Defendant's Motion For Leave of Court To File Bradley Declaration is **DENIED.**

Signed: March 19, 2009

Richard L. Voorhees
United States District Judge